# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 13 |
| ) | |
| STEPHAN DORAN DODDROE AND ) | CASE NO. 06-61947 |
| SHARON ROWENA DODDROE, ) | |
| ) | JUDGE RUSS KENDIG |
| Debtors. ) | |
| ) | |
| ) | **MEMORANDUM OF OPINION** |
| ) | **(NOT INTENDED FOR** |
| ) | **PUBLICATION)** |
| ) | |

First Merit Bank, N.A. (hereafter "First Merit") filed an objection to confirmation of debtors' chapter 13 plan on October 27, 2006. In the plan, debtors propose to surrender collateral to First Merit in full satisfaction of the secured claim. First Merit objects to this treatment and argues it is entitled to sell the collateral, file a deficiency claim for any balance remaining after the sale, and share in the distribution paid to unsecured creditors through the plan. Debtors contend that 11 U.S.C. § 1325(a), and the "hanging paragraph" following section 1325(a)(9), prevent bifurcation of the claim into secured and unsecured portions. Since the claim cannot be split, debtors maintain that surrender of the collateral results in full satisfaction of the amount owed. The parties have submitted papers in support of their positions and the matter is now before the court for decision.

The court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

On or about April 30, 2005, debtors obtained a loan, in the amount of $34,128.08 plus interest, from First Merit for the purchase of a 2005 Dodge Grand Caravan. Debtors filed a joint chapter 13 case on October 2, 2006 and submitted a plan on the same day. The plan proposes to surrender the 2005 Dodge Grand Caravan to First Merit in full satisfaction of the claim and provides a twenty percent dividend to general unsecured creditors.

On October 25, 2006, First Merit filed a secured proof of claim setting forth a balance owed of $31,273.58. After obtaining relief from the automatic stay, First Merit sold the vehicle and filed an amended, unsecured proof of claim for $22,690.12, the balance remaining after the sale.

The parties do not dispute the material facts. Further, there is no argument that the vehicle was not purchased in the nine hundred and ten days prior to the bankruptcy filing or that it was purchased for the personal use of debtors.

## PARTIES' ARGUMENTS

First Merit recognizes that other courts, including courts in this district, have issued decisions supporting debtors' position. However, First Merit contends that these opinions did not focus on the policies behind the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter "BAPCPA"), nor did the opinions attempt to "balance the equities between creditors and debtors." According to First Merit, the hanging paragraph was simply intended to prevent cramdown. It was not the intent of the drafters to create a situation where creditors are in a worse position than under pre-BAPCPA law. First Merit points out that if the vehicle were repossessed and sold prior to the bankruptcy filing, it clearly would be entitled to an unsecured claim for the balance on the loan and maintains that it would be manifestly unfair to treat its claim differently once the case is filed. First Merit also argues that once the property is surrendered, the property is no longer property of the estate and the claim is not valued as property of the estate would be valued. Instead, the value of the claim is determined under state law. See In re Morales, 2007 WL 92414 (Bankr. N.D. Ill. 2007) (reporter citation not available).

Debtors assert that the majority of courts deciding the issue of whether the surrender of collateral securing a 910 claim satisfies a claim in full have found in favor of debtors. The conclusion results from a reading of the hanging paragraph which prevents bifurcation of a claim into secured and unsecured portions. According to debtors, the language of the statute applies the hanging paragraph to the surrender provision of 11 U.S.C. § 1325(a) and, in the absent of any legislative intent to the contrary, the provision must be interpreted in accordance with its plain meaning.

## LAW AND ANALYSIS

In order to confirm a plan, chapter 13 debtors must abide by the directives set forth in 11 U.S.C. § 1325. Included in section 1325(a) are guidelines for treatment of secured claims:

> (5) with respect to each allowed secured claim provided for by the plan--
>
>     (A) the holder of such claim has accepted the plan;
>
>     (B) (i) the plan provides that--
>
>         (I) the holder of such claim retain the lien securing such claim until the earlier of--
>
>             (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>
>             (bb) discharge under section 1328; and

> > > (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>
> > (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>
> > (iii) if--
>
> > > (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>
> > > (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
> (C) the debtor surrenders the property securing such claim to holder.

11 U.S.C. § 1325. In accordance with this section, a court can confirm a plan involving an "allowed secured claim" when either: (1) the creditor accepted the plan; (2) the creditor is receiving payment on its secured claim in accordance with 11 U.S.C. § 1325(a)(5)(B), or (3) the debtor surrenders the collateral. Here, First Merit does not agree to the plan where debtors seek to exercise the third option, surrender of the collateral, without additional payment on the deficiency balance.

In addition to the three requirements found in section 1325(a)(5)(B), there is also language, following section 1325(a)(9) and now commonly referred to as the "hanging paragraph," which offers additional restrictions on designated secured claims. The hanging paragraph provides, in its entirety:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if the collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

The application of the hanging paragraph requires an understanding of what an "allowed secured claim" is under 11 U.S.C. § 1325(a)(5). Although it would seem to be straightforward, the meaning is enshrouded because it is not a defined term in the bankruptcy code. Rather, the meaning is found through application of 11 U.S.C. § 506(a)(1):

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or an plan affecting such creditor's interest.

*See also* In re Young, 199 B.R. 643 (Bankr. E.D. Tenn. 1996). The Sixth Circuit Court of Appeals provided the following working definition:

> [t]he secured portion of the total claim represents the present value of the collateral and the unsecured portion is the remainder, i.e., the amount the allowed claim exceeds the value of the collateral. These two are called in section 1325 the "allowed secured claim" and the "allowed unsecured claim." The secured portion of the total claim represents the present value of the collateral and unsecured portion is the remainder, i.e., the amount the allowed claim exceeds the value of the collateral.

Memphis Bank & Trust Co. v. Whitman, 692 F.2d 427, 429 (6th Cir. 1982); *see also* Americredit Fin. Svcs., Inc. v. Nichols, 440 F.3d 850, 858 (6th Cir. 2006). Clearly, prior to BAPCPA, an allowed secured claim was determined with reference to section 506(a)(1) and based on the present value of the collateral.

Recently, the Bankruptcy Appellate Panel (hereafter "BAP") also delivered a similar comprehension of 11 U.S.C. § 1325(a)(5) in its discussion of the hanging paragraph:

> Section 506, as referenced in the hanging paragraph, generally permits the bifurcation of an undersecured creditors' claim into secured and unsecured components. After bifurcation, a creditor's claim is secured only to the extent of the value of the collateral which secures the debt. The secured portion of the claim is entitled to present value, *i.e.*, interest, and the unsecured portion

> is paid pro-rata with other allowed general unsecured claims.
> The result is commonly referred to as "strip down." Dewsnup
> v. Timm, 502 U.S. 410, 112 S.Ct. 773 (1992); In re Pryor,
> 341 B.R. 648, 651 (Bankr. C.D. Ill. 2006); In re Wright, 338
> B.R. 917, 919 (Bankr. M.D. Ala. 2006). Under BAPCPA,
> claims pertaining to vehicles purchased within 910 days before
> the filing of the bankruptcy case may no longer be stripped
> down-such claims must be treated as fully secured. In re Sparks,
> 346 B.R. 767 (Bankr. S.D. Ohio 2006); In re Wright, 338 B.R.
> at 919-20; In re Soards, 344 B.R. 829, 831 (Bankr. W.D. Ky.
> 2006).

DaimlerChrysler Svcs. North America LLC v. Taranto, 2007 WL 935709, *4 (B.A.P. 6th Cir. 2007) (reporter citation not yet available)(footnote omitted). Although the BAP specifically declined to engage in an analysis of what constitutes an "allowed secured claim," see id. at footnote 3, it did recognize that a majority of courts reject debtors' arguments that 910 claims are not "allowed secured claims." Id. at *4 (citing Sparks, 346 B.R. 767, Triad Fin. Corp. v. Brown (In re Brown), 346 B.R. 246 (M.D. Ga. 2006); In re Brooks, 344 B.R. 417 (Bankr. E.D.N.C. 2006); In re Bufford, 343 B.R. 827 (Bankr. N.D. Tex. 2006); In re Shaw, 341 B.R. 543 (Bankr. M.D.N.C. 2006); In re DeSardi, 340 B.R. 790 (Bankr. S.D. Tex. 2006) (citations to contrary decisions omitted). The court agrees with the premise of these decisions and finds that 910 claims are "allowed secured claims."

Post-BAPCPA analysis of the hanging paragraph is often strained, resulting in legal gymnastics in an attempt to see an individual tree while ignoring the forest. In a broad sense, "allowed secured claim" is straightforward and unambiguous: it is simply a valid claim which is backed by collateral. Section 506(a)(1) informally recognizes it as "[a]n *allowed* claim of a creditor *secured* by a lien on property . . . ." (emphasis added). The court cannot see any reason that the hanging paragraph diminishes or expands the understanding of what an allowed secured claim is in the broadest sense.

What the hanging paragraph does is alter how an allowed secured claim is valued, and thereby treated, in a chapter 13 case. This is where the application of section 506(a)(1) leads to the narrower interpretation of "allowed secured claim." Under pre-BAPCPA law, an allowed claim was "a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." When the value of the collateral was less than the claim amount (the creditor was undersecured), the claim was subject to the illusion that, through the application of section 506, two claims existed: a secured claim and an unsecured claim. No one would seriously argue, however, that the unsecured portion of the claim was truly unsecured because it was subject to a security interest until either the claim was paid or the case discharged. This is the point that many recent decisions miss: the fiction that existed under pre-BAPCPA law resulting in the creation of an allowed-secured-claim-subject-to-treatment-as-unsecured class of claims. The secured portion was valued by determining the present value of the collateral, while the unsecured portion represented the remaining portion of the claim.

The hanging paragraph says that section 506 does not apply to 910 claims, meaning that the valuation of allowed secured claims changes with the enactment of

BAPCPA for 910 claims. Since the application of section 506 under pre-BAPCPA law resulted in bifurcated treatment, the result is that the claims cannot be bifurcated. This understanding not only comports with the legislative history and intent, but is also in accord with many recent decisions. *See, e.g.,* In re Steakley, 2007 WL 259570 (Bankr. E.D. Tenn. 2007); In re Quick, 2007 WL 269808 (Bankr. N.D. Okla. 2007); In re Sparks, 346 B.R. 767 (Bankr. S.D. Ohio 2006); In re Payne, 347 B.R. 278 (Bankr. S.D. Ohio 2006); In re Ezell, 338 B.R. 330 (Bankr. E.D. Tenn. 2006); *cf.* In re Morales, 2007 WL 92414 (Bankr. N.D. Ill. 2007); Dupaco Cmty. Credit Union v. Zehrung (In re Zehrung), 351 B.R. 675 (W.D. Wis. 2006); In re Particka, 355 B.R. 616 (Bankr. E.D. Mich. 2006); In re Hoffman, 359 B.R. 163 (Bankr. E.D. Mich. 2006).

The inquiry must then focus on how the claim is to be valued, which will determine its treatment in chapter 13. Since the claim is subject to different treatment post-BAPCPA, the claim cannot be valued based upon the present value of the collateral, which would generally result in a "remainder" portion of the claim. After consideration, the court agrees with the BAP and finds that the claims must be treated as fully secured. Much like the fiction created when a claim was bifurcated under the old law, this understanding also requires imposition of a fiction: the collateral is worth the amount of the claim. The fiction is necessary to achieve the end result that the claim is fully secured. Now, the fiction results in a class of claims where the value of the collateral is presumed to be equal to the amount of the claim.

Building on this foundation, the next inquiry is whether sections 1325(a)(5)(B) and 1325(a)(5)(C) are both subject to the hanging paragraph and the court concludes that both are. First, the hanging paragraph itself does not limit the application to only one provision: it says "[f]or the purposes of paragraph (5) . . . ." Unless its application to one provision would be result in absurdity, it should be applied as it is written. *See, e.g.,* Payne, 347 B.R. at 281-82. In the context of the discussion above, the application of the hanging paragraph to both (a)(5)(A) and (B) is coherent. It cannot be said that it is so flawed as to warrant linguistic wrangling and strangling to achieve a desired result. It is a zero sum game both ways. If the collateral is retained, the entire claim must be paid regardless of the collateral's value. If the collateral is given up, the entire claim is deemed to be paid regardless of the collateral's value.

With the fiction that the collateral is worth the amount of the claim, the treatment of the provisions is consistent. For subsection (B), this means that, if debtor intends to retain the collateral, it must be paid in full. If the collateral is fictitiously valued at amount of the claim, no unsecured claim results. Likewise, if the collateral is surrendered, there is no unsecured claim. The application is coherent and consistent. Moreover, it is what the statute literally says. It is irrelevant to say that the statute should say something else or the interpretation of the entire bankruptcy code would be reduced to a subjective dogma fistfight.

## CONCLUSION

Applied to the facts of this case, the court finds that First Merit cannot recover on its unsecured claim. The hanging paragraph prevents bifurcation of the claim into secured and unsecured portions. The result is that the claim is fully secured or, in other words, the collateral is presumed to be equal to the value of the claim. Consequently, the

surrender of the collateral represents payment in full of the secured claim.

An order in accordance with this opinion shall be entered forthwith.

/s/ Russ Kendig

RUSS KENDIG
U.S. BANKRUPTCY JUDGE    MAY 3 - 2007

**Service List**:

Phillip D. Schandel
116 Cleveland Ave., N.W.
Suite 109
Canton, OH 44702

Douglas L. Thrush
13 Park Ave., West
Suite 314
Mansfield, OH 44902

Toby L. Rosen
Charter One Bank Building, 4th Floor
400 W. Tuscarawas St.
Canton, OH 44702